**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

26-CR-20405-BECERRA/TORRES

**CASE NO.:**

**18 U.S.C. § 1349**
**18 U.S.C. § 1343**
**18 U.S.C. § 1346**
**18 U.S.C. § 1956(h)**
**18 U.S.C. § 1957(a)**
**18 U.S.C. § 981(a)(1)(C)**
**18 U.S.C. § 982(a)(1)**

FILED BY RCH1 D.C.
Sep 17, 2026
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Miami

**UNITED STATES OF AMERICA**

**v.**

**JANET RISI FIELD and**
**STEVEN LOUIS RISI,**

**Defendants.**

______________________________/

**INDICTMENT**

The Grand Jury charges that:

**GENERAL ALLEGATIONS**

At all times relevant to this Indictment:

**Restaurant Chain-1 and Independent Purchasing Cooperative, Inc.**

1. Restaurant Chain-1 was an American multinational fast-food chain that specialized in submarine sandwiches and had over 20,000 locations in North America.

2. Restaurant Chain-1 restaurants were owned by independent franchisees. During the relevant time period, there were thousands of independent franchisees of Restaurant Chain-1 in North America.

3. Independent Purchasing Cooperative, Inc. ("IPC"), headquartered in Miami-Dade County in the Southern District of Florida, was an independent nonprofit that managed the supply

chain for Restaurant Chain-1 restaurants in North America. IPC negotiated with vendors the cost that franchisees of Restaurant Chain-1 paid vendors for food, supplies, and services.

4. IPC's purpose was to negotiate the lowest cost from vendors to save franchisees money. The member franchisees collectively owned IPC and the board of directors of IPC consisted of certain franchisees.

**The Defendants and their Shell Companies**

5. Defendant **JANET RISI FIELD** was a resident of Miami-Dade County in the Southern District of Florida. **RISI FIELD** helped form IPC in 1996 and served as Chief Executive Officer ("CEO") from approximately 1996 until December 31, 2021, receiving an annual salary and bonus that eventually totaled over one million dollars. As CEO, **RISI FIELD** had a duty to act in the best interests of IPC and not to accept bribes and kickbacks.

6. **JANET RISI FIELD** held substantial influence in determining which vendors IPC selected that would provide food, supplies, and services. **RISI FIELD** had signature authority over contracts that IPC entered into with vendors setting the costs at which the franchisees would purchase goods and supplies.

7. Defendant **STEVEN LOUIS RISI** was **JANET RISI FIELD**'s brother and a resident of Miami-Dade County in the Southern District of Florida.

8. Risi Family Member-1 and Risi Family Member-2 were members of the defendants' family.

9. Defendants **JANET RISI FIELD** and **STEVEN LOUIS RISI**, along with their family members, controlled a series of shell companies for their own personal benefit and the benefit of others. Those companies included Risi Shell Company-1, Risi Shell Company-2, Risi Shell Company-3, and Risi Shell Company-4 (together, the "Risi Shell Companies"). The Risi

Shell Companies received over $60 million in kickback and bribe payments.

**The Co-Conspirators**

10. Advisor-1 was the founder and Chairman of Advisory Firm-1, a corporation formed under the laws of California. Advisory Firm-1 provided consulting and brokerage services for food service companies. Advisor-1's son, Advisor -2, was the company's Chief Executive Officer.

11. Advisory Firm-1 acted as a "broker" in connection with approximately four IPC vendors and received a commission on purchases made by franchisees of Restaurant Chain-1 from those vendors.

12. In addition to Advisory Firm-1, Advisor-1 and Advisor-2 controlled Advisory Shell Company-1, Advisory Shell Company-2, and Advisory Shell Company-3 (together, the "Advisory Shell Companies"), all formed under the laws of California. Advisory Shell Company-1 was formed in or around January 2001 and dissolved in or around June 2007. Advisory Shell Company-2 was formed in or around February 2006 and dissolved in or around December 2011. Advisory Shell Company-3 was formed in or around October 2011 and dissolved in or around August 2016.

13. Between approximately 2000 and 2021, IPC vendors paid Advisory Firm-1 and Advisory Shell Company-1, -2, and -3 over $200 million.

**Vendor-1 & Executive-1**

14. Vendor-1 was a cooperative that manufactured and processed meat and poultry products based in Iowa. IPC and Vendor-1 entered into a large contract for Vendor-1 to supply protein products, including turkey, chicken and other meats, to franchisees of Restaurant Chain-1. Vendor-1 paid Advisory Firm-1 substantial broker fees from approximately 2000 through at least 2022 in connection with the IPC contract.

15. Executive-1 was the President and Chief Executive Officer of Vendor-1 from approximately 2004 until approximately 2022.

**COUNT 1**
**CONSPIRACY TO COMMIT WIRE FRAUD AND HONEST SERVICES WIRE FRAUD**
**(18 U.S.C. § 1349)**

1. The General Allegations section of this Indictment is realleged and fully incorporated herein by reference.

2. From in or around 1996, through on or about February 15, 2022, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**JANET RISI FIELD,**

did willfully, that is, with the intent to further the object of the conspiracy, and knowingly combine, conspire, confederate, and agree with Advisor-1, Advisor-2, Executive-1, **STEVEN LOUIS RISI**, Risi Family Member-2, and others known and unknown to the Grand Jury, to commit offenses under Title 18, United States Code, Sections 1343 and 1346, as follows:

(a) to knowingly, and with the intent to defraud, devise, and intend to devise a scheme and artifice to defraud, including a scheme and artifice to deprive another of the intangible right of honest services of **JANET RISI FIELD**, through the use of kickbacks and bribes, and the concealment of material information, when the defendant foresaw, and reasonable should have foreseen, economic harm to IPC as a result of the scheme, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing such scheme and artifice, did knowingly transmit and cause to be transmitted in interstate commerce by means of wire communications, certain writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Sections 1343 and 1346; and,

(b) to knowingly, and with intent to defraud, devise and intend to devise a scheme and artifice to defraud, and to obtain money and property, by means of materially false and fraudulent pretenses, representations and promises, knowing such pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing such scheme and artifice to defraud, did knowingly transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

## PURPOSE OF THE CONSPIRACY

3. It was the purpose of the conspiracy for the defendant and her co-conspirators to unjustly enrich themselves by defrauding IPC out of both the intangible right to honest services **JANET RISI FIELD** owed IPC and its franchisees, and **RISI FIELD**'s salary, bonus, and severance payments, paid to **RISI FIELD**, through **RISI FIELD's** receipt of tens of millions of dollars in bribes and kickbacks from Advisory Firm-1, its shell companies, Vendor-1, and other IPC vendors seeking to do business with, and receiving payment from, IPC and its member franchises, and making materially false and fraudulent representations and concealing and failing to state material facts concerning, among other things, those bribes and kickbacks.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendant and her co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

### The Bribery & Kickback Scheme

4. **JANET RISI FIELD** had authority to sign contracts with IPC vendors that would determine the price that Restaurant Chain-1 franchisees paid for food, supplies, and services.

5. From in or around 1996 continuing through in or around 2021, Advisor-1 and

Advisor-2 acted as a broker for certain vendors that received IPC contracts to supply franchisees of Restaurant Chain-1, including Vendor-1, a logistics provider, a cookie manufacturer, and a cheese manufacturer.

6. From in or around 1996 continuing through in or around 2021, **JANET RISI FIELD**, Risi Family Member-2, Advisor-1, and Advisor 2, among others, maintained a secret agreement that Advisory Firm-1 would share a portion of the fees generated from IPC contracts with **JANET RISI FIELD** and Risi family members.

7. **JANET RISI FIELD** and her co-conspirators caused the creation of the Risi Shell Companies to receive payment from Advisory Firm-1 in connection with the secret arrangement between Advisory Firm-1 and **RISI FIELD**.

8. Between approximately 2000 and 2021, Advisor 1 and Advisor 2 caused the payment of approximately $60 million of bribes and kickback payments to the Risi Shell Companies for the benefit of **JANET RISI FIELD.** **RISI FIELD** and her co-conspirators directed Advisor 1 and Advisor 2 on which accounts of the Risi Shell Companies to send the money. **RISI FIELD** used these funds for, among other things, the remodeling and furnishing of her Florida and North Carolina residences, private investments, and memberships in private clubs.

<u>The Slush Fund Scheme</u>

9. Beginning in the early 2000s, Executive-1 entered into a secret agreement with **JANET RISI FIELD** for Vendor 1 to fund a slush fund administered through Advisor 1 and Advisor 2. Executive 1 believed the money would be used generally to benefit IPC. In truth, and with Advisory Firm-1's knowledge, **RISI FIELD** used the money to enrich herself and her family members. Advisory Firm-1 was tasked with handling the money to help **RISI FIELD** conceal the payments from Restaurant Chain-1's corporate management and IPC's members.

10. From the early 2000s through 2016, **JANET RISI FIELD**, Executive-1, and Advisor-1 and -2 caused Vendor-1 to pay over $18 million in slush fund monies to the Advisory Shell Companies.

11. Advisor-1 and Advisor-2, through the Advisory Shell Companies, disbursed the money at **JANET RISI FIELD**'s direction. While some expenses were for the benefit of IPC, a significant portion was for **RISI FIELD**'s own enrichment and that of her family members, including over $400,000 for jewelry purchased by **RISI FIELD**; over $420,000 to a Risi family personal assistant for work done for the Risi family; over $1.8 million to Florida Company-1 with a significant portion of that amount paid onward to **STEVEN LOUIS RISI**; and over $150,000 to **RISI FIELD**'s housekeeper and handyman.

12. In approximately 2011, Vendor-1 paid approximately $8 million to settle a lawsuit brought by a former IPC contractor. The lawsuit alleged, among other things, that **JANET RISI FIELD** had an inappropriate financial relationship with one or more IPC vendors. The former contractor threatened to give Restaurant Chain-1 franchisees copies of his complaint at an upcoming corporate convention. To prevent this from occurring, **RISI FIELD** and Advisory Firm-1 asked Vendor-1 and Executive-1 to pay the former contractor $8 million to make the lawsuit go away. Vendor-1 agreed and provided the money necessary to pay the former contractor the $8 million settlement. **RISI FIELD** withheld the substance of the allegations in the lawsuit, and the details of the settlement, from IPC's Board of Directors.

13. In or around 2016, to streamline the kickback payments, **JANET RISI FIELD**, Executive-1, and Advisor -1 and -2 caused the slush fund payments to go from Vendor-1 to Advisory Firm-1 and then directly to Risi Shell Company-4.

14. Between approximately 2016 and October 2021, **JANET RISI FIELD** caused

Advisory Firm-1 to pay Risi Shell Company-4 approximately $4.93 million in funds generated from Vendor-1. **RISI FIELD** and her co-conspirators used the money to enrich themselves, including using $3.4 million to pay **RISI FIELD's** credit card expenses and transferring $1 million to a bank account for which **RISI FIELD** and **STEVEN LOUIS RISI** were the sole signers.

15. In total, **JANET RISI FIELD** caused Vendor-1 to pay approximately $25 million in slush fund payments primarily for the benefit of **JANET RISI FIELD** and her co-conspirators.

**RISI FIELD** Conceals from and Lies to IPC about Her Self-Dealing

16. As the CEO and President of IPC, **JANET RISI FIELD** received an annual salary and bonus contingent upon her compliance with certain IPC policies and requirements. In that role, as she was aware, **RISI FIELD** was required to refrain from accepting bribes and kickbacks from IPC vendors and prospective vendors.

17. **JANET RISI FIELD** failed to comply with this requirement, but falsely and fraudulently misrepresented to IPC's Board of Directors, executives, and others that she had complied.

18. For example, on or about October 27, 2020, **JANET RISI FIELD** executed a Conflict of Interest Certification and Disclosure Statement (the "Certification"). The Certification was attached to IPC's Director and Officer Conflict of Interest Policy, which stated that all IPC directors and officers "have a fiduciary obligation of care and loyalty to IPC and must therefore avoid business, financial, or other interests or relationships, direct or indirect, that create an actual, perceived or potential conflict with IPC's interests, or that may otherwise result in a division of loyalty to IPC's interests."

19. Also, during the course of her employment, **JANET RISI FIELD** falsely certified, via electronic signature, that she was in compliance with IPC's Conflict of Interest policy that

required IPC's executives to "avoid business, financial, or other interests or relationships, direct or indirect that create an actual, perceived or potential conflict with [IPC's] interest, or that may otherwise result in a division of loyalty to [IPC']s interests."

20. In addition, **JANET RISI FIELD** routinely concealed the fact that she was receiving bribes and kickbacks from IPC vendors. For example, in or around November 2021, IPC employees circulated a draft Code of Ethics and Business Conduct that stated the following:

- IPC employees "must avoid any relationship or activity that might impair, or even appear to impair, our ability to make objective and fair decisions when performing our jobs. We must never use [IPC's] property or information for personal gain[.]"
- IPC employees "should avoid any actions that create a perception that favorable treatment of outside entities by [IPC] was sought, received, or given in exchange for personal business courtesies. Business courtesies include gifts, gratuities, meals, refreshments, entertainment or other benefits from persons or companies with whom [IPC] does or may do business."
- "Team Members who award contracts or who can influence the allocation of business, who create specifications that result in the placement of business or who participate in negotiation of contracts must be particularly careful to avoid actions that create the appearance of favoritism or that may adversely affect the company's reputation for impartiality and fair dealing."
- IPC employees should avoid "accepting personal gifts or entertainment from competitors, customers, suppliers, or potential suppliers of $100 or more."

21. **JANET RISI FIELD** reviewed the Code and replied "looks good to me." **RISI FIELD** added that the "only thing that might be in conflict is golf rounds. I know individuals play golf with vendors and a round of golf is certainly more than $100."

22. **JANET RISI FIELD** and her co-conspirators never disclosed to IPC's Directors or franchisees that she received bribes and kickbacks from Advisory Firm-1 and Vendor-1. Instead, **RISI FIELD** affirmatively misled IPC, its franchisees, and her colleagues.

23. In or around 2021, IPC's Board of Directors, unaware of **JANET RISI FIELD**'s receipt of bribes and kickbacks, decided to terminate her employment. Because **RISI FIELD**

concealed her receipt of bribes and kickbacks, IPC terminated her employment without cause and was required to pay **RISI FIELD** over $6 million in severance payments.

All in violation of Title 18, United States Code, Section 1349.

**COUNTS 2-3**
**HONEST SERVICES WIRE FRAUD**
**(18 U.S.C. §§ 1343 & 1346)**

1. The General Allegations section of this Indictment is re-alleged and fully incorporated herein by reference.

2. From in or around 1996, through on or about December 31, 2021, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**JANET RISI FIELD,**

did knowingly, and with intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, including a scheme and artifice to deprive another, that is, IPC, of the intangible right of the honest services of **JANET RISI FIELD**, through the use of kickbacks and bribes, and the concealment of material information, when the defendant foresaw, and reasonable should have foreseen, economic harm to IPC as a result of the scheme, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that they were false and fraudulent when made, and, for the purpose of executing the scheme and artifice, did knowingly transmit and cause to be transmitted in interstate and foreign commerce, by means of wire communication, certain writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Sections 1343 and 1346.

**PURPOSE OF THE SCHEME AND ARTIFICE**

3. It was the purpose of the scheme and artifice for **JANET RISI FIELD** and her accomplices to unjustly enrich themselves by defrauding IPC out of the intangible right of honest

services which **RISI FIELD** owed IPC through her receipt of millions of dollars in bribes and kickbacks from Advisory Firm-1, its shell companies, Vendor-1, and other IPC vendors seeking to do business with, and receiving payment from, IPC and its member franchises, and making materially false and fraudulent representations and concealing and failing to state material facts concerning, among other things, those bribes and kickbacks.

**THE SCHEME AND ARTIFICE**

4. Paragraphs 4 through 23 of the Manner and Means section of Count 1 of the Indictment are re-alleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

**USE OF THE WIRES**

5. On or about the dates specified as to each count below, **JANET RISI FIELD**, as specified in each count below, for the purpose of executing and in furtherance of the aforesaid scheme and artifice, did knowingly transmit and cause to be transmitted in interstate commerce, by means of wire communication, certain writings, signs, signals, pictures and sounds:

| Count | Approximate Date | Description of Wire |
|---|---|---|
| 2 | October 4, 2021 | Deposit of check in the approximate amount of $80,000 from Advisory Firm-1's account outside the Southern District of Florida to Risi Shell Company-4's account in the Southern District of Florida. |
| 3 | December 21, 2021 | Risi Associate-1, while in the Southern District of Florida, emailed Advisor-2, outside the Southern District of Florida, and wrote that "Jan asked me to send you the following wire instructions" and included the wiring instructions for Risi Shell Company-3. |

In violation of Title 18, United States Code, Sections 1343, 1346, and 2.

**COUNTS 4-6**
**WIRE FRAUD**
**(18 U.S.C. § 1343)**

1. The General Allegations section and paragraphs 4 through 23 of Count 1 of this Indictment are re-alleged and fully incorporated herein by reference.

2. From in or around 1996, through on or about February 15, 2022, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**JANET RISI FIELD,**

did knowingly, and with intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and, for the purpose of executing the scheme and artifice, did knowingly transmit and cause to be transmitted in interstate and foreign commerce, by means of wire communication, certain writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Section 1343.

**PURPOSE OF THE SCHEME AND ARTIFICE**

3. It was the purpose of the scheme and artifice for the defendant and her accomplices to unjustly enrich themselves by defrauding IPC out of **JANET RISI FIELD**'s salary, bonus, and severance payments by receiving millions of dollars in bribes and kickbacks from Advisory Firm-1, its shell companies, Vendor-1, and others seeking to do business with, and receiving payment from, IPC and its member franchises, in violation of IPC policy and requirements, and making materially false and fraudulent representations and concealing and failing to state material facts concerning, among other things, those bribes and kickbacks.

## THE SCHEME AND ARTIFICE

4. Paragraphs 4 through 23 of the Manner and Means section of Count 1 of the Indictment are re-alleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

## USE OF THE WIRES

5. On or about the dates specified as to each count below, **JANET RISI FIELD**, as specified in each count below, for the purpose of executing and in furtherance of the aforesaid scheme and artifice, did knowingly transmit and cause to be transmitted in interstate commerce, by means of wire communication, certain writings, signs, signals, pictures and sounds:

| Count | Approximate Date | Description of Wire |
|---|---|---|
| 4 | September 30, 2021 | Transfer of $37,593.44 from IPC to **JANET RISI FIELD's** account in the Southern District of Florida. |
| 5 | October 15, 2021 | Transfer of $3,614,866.65 from IPC to **JANET RISI FIELD's** account in the Southern District of Florida. |
| 6 | February 15, 2022 | Transfer of $3,793,313.32 from IPC to **JANET RISI FIELD's** account in the Southern District of Florida. |

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT 7
**Conspiracy to Commit Money Laundering**
**(18 U.S.C. § 1956(h))**

1. The General Allegations section and paragraphs 4 through 23 of the Manner and Means section of Count 1, of this Indictment, are re-alleged and incorporated by reference as though fully set forth herein.

2. From in or around 2000, through on or about December 31, 2021, in Miami-Dade

County, in the Southern District of Florida, and elsewhere, the defendants,

**JANET RISI FIELD and**
**STEVEN LOUIS RISI,**

did knowingly and voluntarily combine, conspire, confederate, and agree with each other, Advisor-1, Advisor-2, Executive-1, Risi Associate-2, and others known and unknown to the Grand Jury, to commit certain offenses under Title 18, United States Code, Section 1956, that is:

(a) to knowingly conduct a financial transaction affecting interstate and foreign commerce, which financial transaction involved the proceeds of any specified unlawful activity, knowing that the property involved in the financial transaction represented proceeds of some form of unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i);

(b) to knowingly engage in a monetary transaction affecting interstate and foreign commerce, by, through, and to a financial institution, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, and knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1957.

It is further alleged that the specified unlawful activity was wire fraud, in violation of Title 18, United States Code, Section 1343, and honest services wire fraud, in violation of Title 18, United States Code, Sections 1343 and 1346.

All in violation of Title 18, United States Code, Section 1956(h).

**COUNTS 8-9**
**Money Laundering**
**(18 U.S.C. § 1957)**

1. The General Allegations section and paragraphs 4 through 23 of the Manner and Means section of Count 1, of this Indictment, are re-alleged and incorporated by reference as though fully set forth herein.

2. On or about the dates specified as to each count below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**JANET RISI FIELD and**
**STEVEN LOUIS RISI,**

did knowingly engage in monetary transactions affecting interstate and foreign commerce, by, through, and to a financial institution, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, and knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, as more particularly described below:

| COUNT | APPROXIMATE DATE | DESCRIPTION OF TRANSACTION |
|---|---|---|
| 8 | October 20, 2021 | Transfer of approximately $693,000 from Risi Shell Company-4 account to account controlled by **STEVEN LOUIS RISI** and **JANET RISI FIELD** in the Southern District of Florida. |
| 9 | November 3, 2021 | Deposit of check in the amount of approximately $315,900 drawn on an account ending in 8498 into account controlled by **JANET RISI FIELD** in the Southern District of Florida. |

It is further alleged that the specified unlawful activity was wire fraud, in violation of Title 18, United States Code, Section 1343, and honest services wire fraud, in violation of Title 18, United States Code, Sections 1343 and 1346.

In violation of Title 18, United States Code, Sections 1957(a) and 2.

## FORFEITURE ALLEGATIONS

1. The allegations of this Indictment are hereby re-alleged, and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of certain property in which the defendants, **JANET RISI FIELD** and **STEVEN RISI**, have an interest.

2. Upon conviction of a violation of, or conspiracy to violate, Title 18, United States Code, Sections 1343 and 1346, as alleged in this Indictment, the defendants shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such violation, pursuant to Title 18, United States Code, Section 981(a)(1)(C).

3. Upon conviction of a violation of, or conspiracy to violate, Title 18, United States Code, Section[s] 1956 and/or 1957, as alleged in this Indictment, the defendants shall forfeit to the United States any property, real or personal, involved in such offense, and any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1).

4. If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty.

the United States shall be entitled to the forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(1), and the

procedures set forth at Title 21, United States Code, Section 853, as incorporated by Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

FOREPERSON

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

ELI S. RUBIN
ROGER CRUZ
ASSISTANT UNITED STATES ATTORNEYS

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**UNITED STATES OF AMERICA** | **CASE NO.** 26-CR-20405-BECERRA/TORRES

**v.**

Janet Risi Field and Steven Louis Risi,

______________________________________/

Defendants.

**CERTIFICATE OF TRIAL ATTORNEY**

**Superseding Case Information:**
New Defendant(s) (Yes or No) _______
Number of New Defendants _______
Total Number of New Counts _______

**Court Division** (select one)
☒ Miami ☐ Key West ☐ FTP
☐ FTL ☐ WPB

I do hereby certify that:

1. I have carefully considered the allegations of the Indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.
2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, 28 U.S.C. §3161.
3. Interpreter: (Yes or No) No
   List language and/or dialect: ______________
4. This case will take 20 days for the parties to try.
5. Please check appropriate category and type of offense listed below:

| **(Check only one)** | | **(Check only one)** |
|---|---|---|
| I | ☐ 0 to 5 days | ☐ Petty |
| II | ☐ 6 to 10 days | ☐ Minor |
| III | ☒ 11 to 20 days | ☐ Misdemeanor |
| IV | ☐ 21 to 60 days | ☒ Felony |
| V | ☐ 61 days and over | |

6. Has this case been previously filed in this District Court? (Yes or No) No
   If yes, Judge ______________ Case No. ______________
7. Has a complaint been filed in this matter? (Yes or No) No
   If yes, Judge ______________ Magistrate Case No. ______________
8. Does this case relate to a previously filed matter in this District Court? (Yes or No) No
   If yes, Judge ______________ Case No. ______________
9. Defendant(s) in federal custody as of ______________
10. Defendant(s) in state custody as of ______________
11. Rule 20 from the __________ District of ______________
12. Is this a potential death penalty case? (Yes or No) No
13. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)? (Yes or No) No
14. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No
15. Did this matter involve the participation of or consultation with Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? No
16. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024? No
17. Did this matter involve the participation of or consultation with Magistrate Judge Yeney Hernandez during her tenure at the U.S. Attorney's Office, which concluded on April 2, 2026? No

By: ______________________________
ELI S. RUBIN
Assistant United States Attorney
SDFL Court ID No. A5503535

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name:** JANET RISI FIELD

**Case No:** 26-CR-20405-BECERRA/TORRES

Count #: 1

Conspiracy to Commit Wire Fraud and Honest Services Wire Fraud

Title 18, United States Code, Section 1349
* **Max. Term of Imprisonment:** 20 years
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** 3 years
* **Max. Fine:** $250,000, twice the pecuniary gain, or twice the pecuniary loss

Counts #: 2-3

Honest Services Wire Fraud

Title 18, United States Code, Sections 1343 and 1346
* **Max. Term of Imprisonment:** 20 years
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** 3 years
* **Max. Fine:** $250,000, twice the pecuniary gain, or twice the pecuniary loss

Counts #: 5-6

Wire Fraud

Title 18, United States Code, Section 1343
* **Max. Term of Imprisonment:** 20 years
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** 3 years
* **Max. Fine:** $250,000, twice the pecuniary gain, or twice the pecuniary loss

***Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

Count #: 7

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)

* **Max. Term of Imprisonment:** 20 years
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** 3 years
* **Max. Fine:** $500,000 or twice the value of the property involved in the transaction

---

Counts #: 8-9

Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity

Title 18, United States Code, Section 1957

* **Max. Term of Imprisonment:** 10 years
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** 3 years
* **Max. Fine:** $250,000

---

***Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name:** STEVEN LOUIS RISI

**Case No:** 26-CR-20405-BECERRA/TORRES

Count #: 7

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)
* **Max. Term of Imprisonment:** 20 years
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** 3 years
* **Max. Fine:** $500,000 or twice the value of the property involved in the transaction

Counts #: 8-9

Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity

Title 18, United States Code, Section 1957
* **Max. Term of Imprisonment:** 10 years
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** 3 years
* **Max. Fine:** $250,000

***Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**